STATE OF MISSOURI, Respondent, *v.* WILLIAM PERKINS,
Appellant.

### October 18, 1881.

In the absence of evidence of threats, or of any force to overcome resistance,
or of the utmost resistance on the part of the prosecuting witness, a con-
viction for rape will be set aside.

APPEAL from the St. Louis Criminal Court, LAUGHLIN, J.
*Reversed, and defendant discharged.*

T. B. HARVEY and C. O. BISHOP, for the appellant.

J. R. HARRIS, for the respondent.

LEWIS, P. J., delivered the opinion of the court.

The defendant was convicted upon an indictment for rape,
and sentenced to a term of ten years in the penitentiary.

The crime of rape is so revolting to the moral instincts of
civilized society that courts and juries are but too apt to
lose sight of some of the barriers which the law has under-
taken to interpose against an improper conviction. A
strong sympathy, and pity for the victim are effectual to
exclude all toleration of the wretch who is supposed to have
blighted an innocent life for the momentary gratification of
a brutal passion. Even the moral crime of the seducer
deserves, in the estimation of many, all the punishment
which the law has reserved for the forcible ravisher. Thus
it sometimes comes about that the triers of such a charge
as this seem to reverse the ancient maxim, and to hold that
it were better for ninety-nine innocent men to suffer than
that one guilty should escape. We are told upon high
authority that an accusation of rape is one " easily made,
hard to be proved, and still harder to be defended by one
ever so innocent." Our supreme court has, in two notable
instances, illustrated the weight of these considerations, in
setting aside verdicts of conviction, because of insufficiency
in the proofs before the juries. *The State* v. *Burgdorf,*

53 Mo. 65 ; *The State* v. *Jaeger*, 66 Mo. 173.   The present case seems to offer a like opportunity for the judicial correction of a hasty and unauthorized conclusion.   It seems almost incredible that an intelligent jury could be found to convict a prisoner of rape upon such testimony as was given by the prosecuting witness in this case. .

It must be remembered that, as was said in *The State* v. *Burgdorf* (*supra*), the crime under consideration can only be committed where there is on the part of her on whom the attempt is made, " the utmost reluctance and the utmost resistance."   Any element of consent, however slight, or of passive submission not enforced by violence or induced by fear, will destroy all legal criminality in the act.   So much is clearly implied in the statutory expression, " for-cibly ravish," and such has always been the effect authoritatively given to these words.

The prosecutrix was fifteen years of age, and described by a physician as " a healthy girl in every way."   She testifies, in effect, that she was employed in the service of one Goldsmith, who kept a boarding-house for men, on the levee, in St. Louis.   She slept in the kitchen, which was directly under a room occupied by a number of lodgers, and a room occupied by the proprietor and his wife.   At eleven o'clock in the night she was sleeping, when the defendant entered and blew out a lamp which was burning in the room.   He then got upon her bed and committed the act complained of.   She proceeds to relate that he remained with her a full hour, during which time the act was repeated four times.   In the intervals, he stood by the bed or sat upon a chair near by.   She says that she " hollered," and the defendant placed his hand upon her mouth.   That, altogether, his hand was so upon her mouth for the space of five minutes.   That he also held her hands tight.   This is the sum of all the force used by him, and of her resistance, during a visit of one hour's duration.   There was no threat or intimidation.   The defendant said nothing the whole time, except

to offer the prosecutrix $2, which she refused.   Not a word
is said of any struggles or resistance on her part, or of any
reason why she did not attempt to escape between the sev-
eral assaults during that long hour.   When asked, in cross-
examination, whether she made any objection, she answered,
No.   At some time during the proceedings, she told the de-
fendant that if he did not go away, she would go home —
a threat that hardly indicated a sense of compulsory deten-
tion.   Nothing else was said by her at any time, except that
she cried out the name of Mrs. Goldsmith.   Finally, she
got up, deliberately dressed herself and went home, leaving
the defendant sitting on the chair.   Can a reasonable un-
derstanding discover anywhere in this deportment of the
prosecutrix, "the utmost reluctance and the utmost resist-
ance?"   We think not.   But if we err in this, the remark-
able contradictions and inconsistencies in the state's testi-
mony were enough to destroy its whole force, or at least to
establish a more than reasonable doubt in the defendant's
favor.   The prosecutrix swears that she can tell nothing
about the defendant's coming into her room, because when
she was awaked by him she "couldn't see nothing — it was
dark."   Yet, at another time, she testifies that she saw
him come in and blow out the light; and again, that she
does not know how he got on the bed, because she was
asleep.   In the course of her examination she says at one
time that during the assaults the defendant's hands were
employed in stopping her mouth, and at another that he
was holding her hands.   At one time she is positive that
the act was committed only once, and at another that it
was committed three or four times.   At one time, that her
mouth was stopped only five minutes, and at another that
the defendant was in the room "about an hour," and had
his hands on her mouth "all the time."   At the same time
he was holding her hands "tight," and performing the
criminal act.   "The room was dark — it was entirely dark.
I couldn't see who came into my room.   He could come in

and go out without anyone seeing him." After these declarations, she swears that she saw her ravisher's exposed person when he opened his pants. The statements of the prosecutrix are directly contradicted in many important particulars by the testimony of other witnesses on the part of the state. A physician who examined the girl on the day following the alleged crime, testifies to nothing that would demonstrate a recent struggle in defence of her chastity. There was a slight fresh bruise upon her person, and there were several others of evidently much longer standing. "There was no more inflammation or swelling * * * than usually attends a first assault upon virginity."

If the bill of exceptions fairly presents the testimony as delivered on the trial, there was really no case against the defendant to be submitted to a jury. There was literally no evidence of utmost resistance on the part ·of the prosecutrix, or of any such force used by the defendant as might have been capable of overcoming it. Nor is it easy to discover wherein the utmost reluctance of the alleged victim appears. The facts detailed are at war with any conception of a healthy girl of fifteen battling for her chastity, and only losing it when it is torn from her by a force or a terror stronger than her powers of defence. Courts cannot stretch the law to the punishment of offences unknown to it, however they may be denounced by a just or universal moral sentiment. The judgment will be reversed and the defendant discharged. All the judges concur.